**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ex rel., Ronald D. Irwin,<br><br>        Plaintiff,<br><br>vs.<br><br>Significant Education, Inc., a.k.a. Grand Canyon Education, Inc., a Delaware corporation doing business as Grand Canyon University,<br><br>        Defendant. | No. CV-07-1771-PHX-DGC<br><br>**ORDER** |

Plaintiff-Relator Ronald Irwin brings this qui tam action against Defendant alleging violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)-(2). Dkt. #11. Defendant has filed a motion to dismiss all claims. Dkt. #23. For the reasons that follow, the Court will deny the motion.

I.

Irwin was hired by Grand Canyon University (GCU) on February 13, 2006 as an enrollment counselor and promoted to National Corporate Liaison shortly thereafter. Dkt. #11 ¶ 37. His job responsibilities included giving presentations, enrolling students, and collecting leads that could be solicited by phone bank personnel. *Id.* ¶ 38. Irwin alleges that GCU repeatedly violated the incentive compensation ban placed by the federal government on schools receiving Title IV funds. *Id.* ¶ 42; *see* 20 U.S.C. § 1094(a)(20);

34 C.F.R. § 668.14(b)(22)(i). The incentive compensation ban prohibits schools that receive Title IV funds from providing "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any person or entities engaged in any student recruiting or admission activities." 20 U.S.C. § 1094(a)(20). Irwin argues that GCU violated the False Claims Act by falsely certifying that it was compliant with the incentive compensation ban in order to receive federal grants and student loans. Dkt. #11 at 2.

In the complaint, Irwin details more than twenty separate instances in which GCU violated the incentive compensation ban by compensating enrollment counselors directly based upon securing enrollments, ranking counselors against each other based upon the number of enrollments they secured, and providing incentive trips, lunches, dinners, gift certificates, and paid days off based upon the number of enrollments secured. Defendant does not dispute that it certified that it was compliant with the incentive compensation ban in order to receive the federal funds. Instead, Defendant seeks dismissal of all claims on the grounds that: (1) GCU's practices are lawful and do not violate Title IV, (2) student loan funds were not paid to GCU directly by the government, and (3) Irwin failed to plead fraud with sufficient particularity. Dkt. #23. The motion has been briefed fully. No party has requested oral argument.[1]

II.

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v.*

---

[1] Plaintiff's memorandum fails to comply with the font-size requirements of the Court's local rules. Plaintiff shall comply with these rules in all future filings.

- 2 -

*DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). The court may not assume that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

### III.

Defendant contends that all claims should be dismissed because all of the alleged wrongful practices are actually permissible under Title IV. Dkt. #23 at 4-9. Defendant first argues that Irwin's claims of termination threats, location transfers, promotions, and GCU's administration of the Family Medical Leave Act are personnel matters rather than compensation and, therefore, are not covered by the Higher Education Act. In support, Defendant relies on an unpublished Ninth Circuit memorandum opinion and a 1999 letter issued by the Department of Education (DOE). *Id.* at 4-5; *United States ex rel. Bott v. Silicon Valley Colleges*, 262 Fed. Appx. 810, 810 (9th Cir. 2008).

Defendant does not identify the source of the 1999 letter, does not assert that Defendant relied upon it in developing Defendant's personnel policies, and provides no basis for concluding that it reflects current DOE policy. Defendant also fails to cite any legal authority holding that ten-year-old letters issued by the DOE are controlling authority for this Court.[2] Moreover, even assuming that personnel matters are not covered by the Higher Education Act, these matters make up only a small part of Plaintiff's complaint.

---

[2] Defendant's exhibits B and C – DOE letters from 1997 and 1995 – suffer from the same lack of support.

- 3 -

Defendant also asserts that Irwin's claim that compensation was based on the number of enrollments does not amount to a violation because the compensation adjustments were not based *solely* on the number of students enrolled. Dkt. #23 at 5-6. Defendant points to Irwin's allegation that his 2007 performance review was adjusted based on his attendance, work ethic, proper use of paid time off, integrity, and team and self-leadership qualities. Dkt. #23 at 7; Dkt. #1 ¶ 46. Defendant fails to note that in the same paragraph Irwin calls into question the veracity of this performance review because his managers rarely or never took the time to observe his work. Irwin also notes that: (1) Mr. Tidwell stated that hitting the enrollment goal is "the only way you will increase your personal income[,]" (2) Mr. Chandler stated that a raise would never be approved with Irwin's enrollment numbers because "if we don't get paid, you don't get paid[,]" and (3) Mr. Mayhew sent an e-mail stating "Remember, the more events you have the more opportunities you have to enroll which equals a bigger check for each of you." Dkt. #1 ¶¶ 51, 43, 52 (emphasis in original). Irwin alleges elsewhere in the complaint that sales performance – the number of enrollments obtained – was the key to financial success in Defendant's employ. *Id.* ¶¶ 19, 21. Accepting these allegations as true and construing them in the light most favorable to Irwin, the Court cannot conclude that Irwin has failed to allege a violation of the incentive compensation ban.

IV.

Defendant argues that Irwin's claims involving student loan funds are barred by the United States Supreme Court case of *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), because Irwin cannot allege that GCU received FFELP or FDLP funds directly from the government. Dkt. #23 at 9-11. Section 3729(a)(2) imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). In *Allison Engine*, the Supreme Court held that "a plaintiff asserting a [section] 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim."

1  128 S. Ct. at 2126.  It is not sufficient that government funds were simply used to pay the
2  claim. *Id.* at 2128 (noting that imposing liability anytime government funds are used would
3  create an almost boundless reach).
4        Defendant's argument that funds must be transferred directly from the government to
5  Defendant misses the mark.  The issue is not whether the payment was directly transmitted
6  from the government to Defendant, but whether the Defendant made a false statement or
7  record to get the government to pay or approve the claim.  Even in *Allison Engine*, the Court
8  noted that section 3729(a)(2) applies to payments made to a subcontractor through a prime
9  contractor so long as the subcontractor submitted a false statement to the prime contractor
10 "intending for the statement to be used by the prime contractor to get the Government to pay
11 its claim." *Id.* at 2130.  Irwin alleges that Defendant falsely certified that it complied with
12 the incentive compensation ban with the intent that the government pay or approve the claim
13 for student loan funds, including but not limited to FFELP funds.  Dkt. #11 ¶¶ 32-33.[3]

                                                      V.

15       Defendant contends that Irwin has failed to plead fraud with sufficient particularity.
16 Dkt. #23 at 11.  Certain elements of fraud claims carry a higher standard of pleading under
17 the Federal Rules Civil Procedure: "In all averments of fraud or mistake, the circumstances
18 constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge,
19 and other condition of the mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).
20 "While statements of the time, place and nature of the alleged fraudulent activities are
21 sufficient, mere conclusory allegations of fraud are insufficient."  *Moore v. Kayport Package*
22 *Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

---

[3] Defendant argues in its reply brief that section 3729(a)(2) does not apply because the lender, not the government, provided the government-insured funds to GCU. Dkt. #30 at 10. The Court will not dismiss Irwin's claim on the basis of an argument raised for the first time in the reply brief.

In the motion to dismiss, Defendant cites carefully selected statements from among the many detailed allegations of wrongdoing in Plaintiff's complaint. In addition to numerous allegations of specific violations of the incentive compensation ban containing both the date and name of the GCU employee involved, Dkt. #11 ¶¶ 39-63, Irwin provides detailed descriptions of how GCU management officials falsely certified to the government that GCU complied with the incentive compensation ban in order to receive Title IV funding. *See e.g.* ¶¶ 24 (GCU's management officials every year "falsely certify to the DOE compliance with the incentive compensation ban in the PPA and federal regulations" including in "GCU's May 2005 PPA submitted to DOE and in its March 2008 application for recertification."); 25 (GCU's management officials "every year also falsely assert compliance with the incentive compensation ban in 'management assertion letters' written by GCU management for annual compliance audit"); 26 ("GCU annually certifies in a management assertion letter that it has 'not paid to any persons or entities any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments . . . for each year at issue'"); 27 ("GCU deliberately conceals from DOE its continual and ongoing practices that intentionally violate the HEA incentive compensation ban as part of GCU's protracted fraudulent conduct to falsely obtain Title IV funds from the DOE"); 31 ("GCU's claims for Pell Grant funds are fraudulent. When GCU requests, receives, and retains the Pell Grant funds, GCU knows it is ineligible to receive those funds because of its intentional violations of the HEA incentive compensation ban."); 32 (GCU falsely certifies that the students applying for Title IV funds are eligible even though GCU "knows that this claim for funds is false when made because GCU knows its students are not eligible under the Title IV program due to GCU's violations of the HEA incentive compensation ban."); 33 ("When GCU requests, receives and retains the government insured loan funds, GCU knows it is ineligible for those funds because of its intentional violations of the HEA incentive compensation ban."). The Court concludes that these allegations

sufficiently apprise Defendant of the allegedly fraudulent statements.  Irwin has pled fraud with sufficient particularity under Rule 9(b).[4]

**IT IS ORDERED:**

1. Plaintiff's motion to dismiss (Dkt. #23) is **denied**.

2. The Court will set a Rule 16 case management conference by a separate order.

DATED this 10th day of February, 2009.

_____
David G. Campbell
United States District Judge

---

[4] In a footnote, Defendant argues that although Irwin states that GCU made false claims to the government from 2001 to present, Irwin fails to allege any specific false statements dated earlier than May 2005. Dkt. #23 at 3 n.1. As discussed above, the Court finds that Irwin has sufficiently stated a claim for fraud under Rule 9(b). Limiting the claim to 2005 and later is best suited to a motion for summary judgment.

- 7 -